UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA CATALDI,

    Plaintiffs,

v.

Case No. 17-11487
HON. DENISE PAGE HOOD

OCWEN LOAN SERVICING, LLC,

    Defendant.

_____/

# ORDER GRANTING DEFENDANT'S
# MOTION TO DISMISS [#16]

## I. INTRODUCTION

Defendant filed a Motion to Dismiss Amended Complaint on July 31, 2017, Dkt. No. 16, and it has been fully briefed. The Court held a hearing on the Motion to Dismiss on October 11, 2017. For the reasons that follow, the Court grants Defendant's Motion to Dismiss.

## II. BACKGROUND

This case stems from Defendant alleging calling Plaintiff more than 1,347 times between March 30, 2011 and December 15, 2015 in an effort to collect a debt. Dkt. No. 12, Paragraphs 22, 27, 34. Plaintiff alleges that she revoked any consent to be called, as set forth in more detail below, even beyond December 15, 2015. Plaintiff alleges that the calls caused significant emotional harm and distress.

Plaintiff's five-count Complaint alleges Defendant's conduct: (1) violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et. seq. ("TCPA") (Counts I and II); (2) was negligent (Count III); and (3) violated the Michigan Occupational Code, Mich, Comp. Laws § 339.901 et seq. ("MOC") ("Counts IV and V).

## III. APPLICABLE LAW & ANALYSIS

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.    TCPA Claim**

   *1.    Consent/Revocation*

In order to state a TCPA claim for calls made to a cellular phone, a plaintiff must establish that: (1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or pre-recorded message, and (3) without prior consent of the recipient plaintiff. 47 U.S.C. § 227(b)(1)(A). *See also Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09–12262, 2010 WL 2632562, at \*\*6–7 (E.D. Mich. June 29, 2010); *Strand v. Corinthian Colls., Inc.*, No. 13-1235, 2014 WL 1515494, at \*2 (W.D. Mich. Apr. 17, 2014).

Defendant argues that Plaintiff's TCPA claims fail because she failed to adequately plead revocation of consent. According to the FCC, if consent has been given, "the caller may reasonably rely on the valid consent previously given and take the consumer at his word that he wishes for the caller to contact him at the number he provided when the caller obtained the consent," until "clear revocation" of consent occurs. *In re Rules & Regulations Implementing the TCP Act of 1991 et al.*, 30 F.C.C. Rcd 7961, 7992-93 (July 10, 2015). A consumer "may revoke consent in any manner that clearly expresses a desire not to receive further messages." *Id* at 7996.

Plaintiff argues that revocation of consent is not an element of her prima facie case. Plaintiff correctly argues that prior express consent is an affirmative defense,

and Defendant has the burden of proof of establishing the consent. *In re Rules & Regulations Implementing the TCP Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("Express consent is not an element of plaintiff's prima facie case").

In this case, however, Plaintiff never pleads that the calls were "without prior consent." In a light most favorable to her, she states "if prior consent ever existed." *See* Dkt. No. 12, ¶ 30 ("Sometime after [Defendant] first began to call Plaintiff, Plaintiff clearly revoked any conceivable prior express consent, if prior consent ever existed, by stating that Plaintiff no longer wished to be contacted by telephone."). Plaintiff also alleges that she "answered several of the . . . telephone calls from Defendant and asked Defendant to stop calling." *Id.* at ¶ 31.

As Plaintiff has allowed that there was prior consent, she must plead that the consent was revoked at some point in order to have a period during which she did not consent to calls from Defendant. Defendant argues that Plaintiff's allegations that she revoked her consent lack the factual specificity required by *Iqbal/Twombly*. Defendant argues that Plaintiff fails to allege "*who* particularly the revocation was directed to (i.e. what department or division, a live person or a voicemail), *when* such revocation was made, or *what* particularly the Plaintiff said in order to make the revocation sufficiently 'clear' to the caller." Dkt. No. 16, PgID 163 (emphasis in

4

original). In a case where Plaintiff alleges that she received thousands of calls from 2011 to 2015, Defendant contends that the timing of any alleged "clear revocation" of consent is critical and must be plead with more specificity than merely alleging that consent was revoked "at some point after [Defendant] first began to call" her on March 30, 2011.

Plaintiff argues that the "who, what, when" are all present in the allegations set forth in Paragraph 30 of her Amended Complaint. Plaintiff asserts that the allegations in Paragraphs 31-33 and 35 further develop the specificity: (a) "Plaintiff answered several of the above mentioned telephone calls from Defendant and asked Defendant to stop calling" ¶ 31; (b) "the calls continued without interruption" ¶ 32; (c) "[e]ach of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone" ¶ 32; and (d) "the calls by Defendant to Plaintiff's cell phone continued, even after Plaintiff's oral revocation" ¶ 35.

The Court concludes that Plaintiff has failed to plead a claim that has facial plausibility because she has not pled "factual content" that allows the Court to draw the reasonable inference that the Defendant is liable for making the calls without Plaintiff's consent. *Ashcroft*, 556 U.S. at 678. Simply alleging that she asked Defendant to stop calling "at some point" after she began receiving calls does not

5

provide the necessary factual content, particularly as she does not give any detail regarding the occasion(s) she allegedly made the request(s).

   2.   *Statute of Limitations*

It is undisputed that TCPA claims are governed by a four-year statute of limitations. *See, e.g., Compressor Eng'g Corp. v. Chicken Shack, Inc.*, 2013 WL 4413752, at **3-4 (E.D. Mich., Aug. 15, 2013) (holding that the four-year period of limitations under 28 U.S.C. § 1658 applies to TCPA claims). Defendant argues that any TCPA claims based on calls allegedly made on or before May 9, 2013 are barred because of the four-year statute of limitations. Plaintiff asserts that the pendency of a related class action filed in the Northern District of Illinois in 2014 (*Keith Snyder, on behalf of himself and all others similarly situated v. Ocwen Loan Servicing, LLC*, Case No. 1:14-cv-8461, filed October 27, 2014) operates to toll the four-year statute of limitations. Relying on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). Pursuant to *American Pipe*, "tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action." *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7 th Cir. 2011). A number of circuit courts have concluded that tolling applies to cases filed either before or after a decision on class certification has been rendered. *See, e.g., In re WorldCom Sec. Litig.*, 496 F.3d 245, 254 (2d Cir. 2007); *In re Hanford Nuclear Reservation*

*Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1235 (10th Cir. 2008).

Plaintiff's argument is eviscerated by the fact that the Sixth Circuit has held otherwise. *See Wyser-Pratte Mgmt. Co. v. Texlon Corp.*, 413 F.3d 553, 568-69 (6th Cir. 2005) (concluding that a plaintiff may not rely on a related class action to suspend the limitations period pursuant to *American Pipe* when the plaintiff "fil[ed] suit before decision on the motion for class certification"). The court noted that a number of district courts had held that "a plaintiff who chooses to file an independent action without waiting for a determination of the class certification may not rely on the *American Pipe* tolling doctrine. *Id.* at 568. The *Wyser-Pratte* court explained, "The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions <u>before</u> decision on the issue of class certification, but are when plaintiffs delay until the class certification issue has been decided." *Id.* at 569 (emphasis added). *See also Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789 (6 th Cir. 2016) (recognizing that *Wyser-Pratte* is binding and controlling authority in the Sixth Circuit, even if it is the minority rule); *Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637, 644 (6th Cir. 2015) (the "litigation efficiency and economy of Rule 23 would be lost for the parties and the court if class members filed motions to intervene in the suit or filed independent protective actions

7

before the court has the opportunity to rule on the viability of a putative class action"); *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 480 (6th Cir. 2013).

Based on *Wyser-Pratte* and its progeny, *American Pipe* does not operate to toll Plaintiff's TCPA claims.[1] Accordingly, Plaintiff's TCPA claims stemming from any calls on or before May 9, 2013, are barred.

**C. Negligence Claim**

In Michigan, a prima facie case of negligence requires that a Plaintiff establish: (1) existence of a duty owed by defendant to plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *See, e.g., Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000) (citation omitted). Defendant asserts that Plaintiff's negligence claim fails, as a matter of law, because she fails to set forth any duty of care owed her by Defendant (Defendant also summarily suggests that Plaintiff did not adequately plead the elements of breach and proximate cause and did not offer any argument on those elements). The question of whether a duty exists is a question of law. *See, e.g., Cleveland Indians Baseball Co. v. New Hampshire Ins. Co.*, 727 F.3d 633, 638 (6th

---

[1] For the same reasons set forth in Section III.B., *American Pipe* would not operate to toll Plaintiff's negligence or MOC claims. As a result, any negligence claim against Defendant for conduct that occurred prior to May 9, 2014 is barred by the three-year statute of limitations applicable to negligence claims in Michigan. M.C.L. § 600.5805.

8

Cir. 2013) (citation omitted).

Defendant argues that the Sixth Circuit has held that a loan servicer – which Defendant claims it is – owes no duty to the borrower of a residential mortgage loan. *Campbell v. Nationstar Mortg.*, 611 F.App'x 288, 299 (6th Cir. 2015) (not permitting plaintiff to use an alleged violation of HAMP as a basis for her negligence claim); *Rush v. Freddie Mac*, 792 F.3d 600, 605-06 (6th Cir. 2015) (*rehearing den.*, Aug. 12, 2015) (same). *See also Wiggins v. Ocwen Loan Serv., LLC*, 2017 U.S. Dist. LEXIS 16073, at *17 (E.D. Mich., Feb. 6, 2017) (no duty of care arising out of RESPA); *Ryan v. Ocwen Loan Serv., LLC*, 2016 U.S. Dist. LEXIS 41792, at **10-11 (E.D. Mich., Mar. 30, 2016) (defendant "did not owe a duty of care [under RESPA] to plaintiff that was separate and distinct from their contractual obligations under their mortgage and note.").

Plaintiff counters that the four cases cited by Defendant involve claims based on statutory claims under RESPA or HAMP and the duties arising thereunder. Plaintiff asserts that she has asserted negligence *per se* in her Amended Complaint and does not rely on the TCPA for her negligence claims. Plaintiff relies on non-Sixth Circuit cases that have found that a "creditor-bank owes a duty of reasonable care to its customers in the collection of debt." Citing *Colorado Capital v. Owens*, 227 F.R.D. 181, 188 (E.D.N.Y. 2005). *See also Lowe v. Surpas Res. Corp.*, 253 F.

Supp. 2d 1209, 1237 (D. Kan. 2003); *Tourgeman v. Collins Fin. Servs.*, 2010 U.S. Dist. LEXIS 123683, at \*18, 2010 WL 4817990 (S.D. Cal. Nov. 22, 2010) (rejecting defendant's request to hold as a matter of law that a collector owed no duty of care to the consumer); *Hatton v. Bank of Am., Nat'l Ass'n*, No. 1:15-cv-00187-GSA, 2015 U.S. Dist. LEXIS 89448, at \*22 (E.D. Cal. July 8, 2015) (citations omitted) (a plaintiff's "lack of bargaining power coupled with conflicts of interest that exist in the modern loan servicing industry provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers…."); *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149, 1164-65 (N.D. Cal. 2007) (over 90 calls in a 15 month period was unreasonable, amounting to an invasion of privacy); *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009).

The Court finds that Plaintiff has not met her burden of alleging that Defendant, as a mortgage loan servicer, owed her (a borrower) a duty of care. Plaintiff has not cited any authority that suggests a mortgage loan servicer owes a duty of care "to not infringe on Plaintiff's privacy rights when collecting on alleged debts and not calling Plaintiff hundreds of times to harass and/or abuse Plaintiff." Dkt. No. 12, ¶ 70. Nor has Plaintiff cited any authority (outside the TCPA) that "calling Plaintiff on Plaintiff's cellular telephone an excessive number of times, as

10

discussed above, and continued to call despite Plaintiff's request that the calls stop" constituted a breach of that duty. *Id.* at ¶ 71. As the quoted language demonstrates, the only conduct at issue (calling Plaintiff excessively, "hundreds of times" "despite Plaintiff's request that the calls stop") is the conduct upon which Plaintiff relied to bring her TCPA claims. The Court dismisses Plaintiff's negligence claim.

**D. MOC Claim**

Defendant argues Plaintiff's MOC claim fails as a matter of law because Defendant it is a mortgage servicing company, not a "collection agency" subject to regulation under the MOC. The MOC expressly provides that it does not apply to entities "whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency, such as . . . [a] business that is licensed by this state under a regulatory act that regulates collection activity." M.C.L. § 339.901(b)(vii). Defendant is registered with, and regulated by, Michigan's Department of Insurance and Financial Services, and is not a collection agency under the MOC. *Zaher v. Argent Mortg. Co. LLC, Ocwen Loan Serv., LLC, et al.*, 2017 U.S. Dist. LEXIS 6445 (E.D. Mich., Jan. 18, 2017) ("Defendants are not collection agencies; rather, they are mortgage services companies. Plaintiff has failed to plead any facts that show how [the MOC] could apply to Defendants since they . . . 'operat[e] a business other than that of a collection agency.").

In her response, Plaintiff admits that Defendant is a mortgage servicer, though she seemingly suggests that because Defendant did not originate or create the debt it seeks to collect, Defendant is a collection agency. Plaintiff argues that, if Defendant is a regulated person under the Michigan Department of Insurance and Financial Services, Defendant is subject to the Michigan Collection Practices Act, M.C.L. § 445.250 *et seq.* (the "MCPA"). Based on Plaintiff's response, the Court dismisses Plaintiff's MOC claims.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss and DISMISSES Plaintiff's cause of action. Judgment shall be entered accordingly.

IT IS ORDERED.

s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: November 30, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2017, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager